IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| **MURRY LEE OWENS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: CV 03-P-0479-J |
| | ) | |
| **TOWN OF PARRISH, et al.** | ) | |
| | ) | |
| Defendants. | | |

### MEMORANDUM OPINION

The court has before it Defendants' Motion for Summary Judgment (Doc. #22) and Plaintiff's Response to the Court's November 17, 2004 Show Cause Order Regarding Service on Frederick Boles. (Doc. # 60). The summary judgment motion has been fully briefed and was taken under submission, without oral argument, as of May 7, 2004. (Doc. # 54).

Plaintiff Murry Lee Owens has brought suit against the Town of Parrish (the "City"), the Parrish Police Chief Morris Polion, Police Officer Frederick Boles, and Police Officer Daniel Mosley. Plaintiff has alleged that all Defendants deprived him of his Fourth Amendment rights under 42 U.S.C. § 1983.[1] Plaintiff has also brought state law claims for false imprisonment, conversion, and negligence against all Defendants,[2] and state law claims for assault and battery

---

[1] Although it appears that Plaintiff alleges claims against Polion, Boles, and Mosley in both their individual and official capacities, the law is clear that an official capacity claim against an officer under § 1983 is a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159 (1985). Therefore, any claims in this case against the individual Defendants in their official capacities are claims against the City, *see Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991), and the court will not address them separately.

[2] Although Plaintiff also alleges that the City and Polion are liable because they failed to train and supervise the officers involved in this case, those claims are pled as constitutional violations and will be addressed by the court under its analysis of the § 1983 claims.

against Boles, Mosley, and the City.

Defendants the City, Polion, and Mosley have moved for summary judgment. Defendant Boles has not appeared in the case. However, for the reasons outlined below, the court finds that service was never perfected against Defendant Boles and therefore, Plaintiff's claims against Defendant Boles are due to be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

With respect to the summary judgment motion, for the reasons outlined below, Defendants' motion is due to be granted as to the City and Polion because there are no disputed issues of material fact and those Defendants have demonstrated that they are entitled to judgment as a matter of law. The Defendants' motion also is due to be granted as to the conversion claim against Mosley but denied as to all other claims against Mosley.

## I.   Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II.     Relevant Undisputed Facts[3]

The Town of Parrish is located in Walker County, Alabama. (Complaint, ¶ 7). Parrish's government consists of an elected Town Council and an elected Mayor, who reports to the Council. (Polion Aff. ¶¶ 3, 4). The Parrish Police Department (the "Department") is headed by a police chief who reports to the Mayor and ultimately to the Council, which possesses the ultimate authority to hire and fire police officers and the chief. (*Id.* at ¶ 4). Morris Polion was Chief of the Department from August 1998 through Spring 2003. (*Id.* at ¶ 2). Frederick Boles was formerly employed by the Department as a police officer. (*See* Complaint, ¶ 8). Daniel Mosley joined the Department in 1997 and was a police officer during the relevant time period. (Mosley Aff. ¶ 2).

Plaintiff Murry Lee Owens is a resident of Parrish. (Owens Dep. p. 10-11). Plaintiff has been involved in numerous altercations and arrests in Parrish.[4]

On February 9, 2001, Plaintiff was parked near Mae Farris Road in Parrish, which is off of Main Street. (Owens Dep. p. 13-15). According to Officer Mosley, this area had been the site of regular drug transactions in the past and Mosley saw two persons he thought to be drug dealers in

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[4] In July 1982, Plaintiff was arrested for third degee assault. (Doc. # 25, Ex. E). In October 1989 and January 1990, he was arrested for U.P.P.B. (Doc. # 25, Ex. E). In March 2001, he was arrested for being disorderly in the presence of civilians at the City Hall of Parrish. (Doc. # 25, Ex. E). In April 2001, he was arrested after an argument with a city employee over the pick-up of the Plaintiff's garbage. (Owens Dep. p. 135-138; Doc. # 25, Ex. E). In August 2001, Plaintiff was arrested after an altercation near his home. (Owens Dep. p. 131-134; Doc. # 25, Ex. E). He was also arrested and convicted on charges of disorderly conduct and resisting arrest at a meeting of the Parrish City Council in October 2001. (Owens Dep. p. 123-130; Doc. # 25, Ex. E). In February 2002, he was arrested for harassment and menacing after an altercation near his home. (Doc. # 25, Ex. E). Plaintiff was arrested again in March 2002 on charges of disorderly conduct at a meeting of the Parrish City Council. (Doc. # 25, Ex. E). He was again arrested after an altercation with his neighbor in November 2002. (Owens Dep. p. 115-122 ).

the area. (Doc. # 25, Ex. D, ¶ 3).[5] Mosley observed vehicles parked on the side of the road. (*Id.* at ¶ 4). One individual known by Mosley as Mad Dog pulled off in a car with Victor Thomas, a person whom Mosley thought to be a drug user and dealer. (*Id.* at ¶ 4).[6] Mosley observed Thomas and Mad Dog drive around the block and return. (*Id.* at ¶ 4).[7] Mosley advised Officer Boles that Thomas might be holding drugs because he had been dropped off by a known drug dealer. (*Id.* at ¶ 5).[8] Plaintiff recalls that Victor Thomas was in the vicinity at the time these events transpired, although not near his truck. (Owens Dep. p. 26).

Plaintiff and Mosley disagree on what happened next. Plaintiff claims that he was sitting in his truck alone. (Owens Dep. p. 15).[9] Mosley testified that he approached Plaintiff's truck, and that Plaintiff became hostile, opening his door and striking Mosley with it. (*Id.* at ¶ 5-7). According to

---

[5] Although Plaintiff disputes that the persons seen in the area were drug dealers (he claims they were merely users), and disputes that this area was a known drug area, he offers only his testimony in opposition. (Doc. # 55, at 3-4). The court will assume, for purposes of summary judgment, that Officer Mosley believed -- whether true or not -- that the area was known for drug transactions and that the persons spotted were drug dealers.

[6] Although Plaintiff's response to Defendant's statement of facts indicates that Plaintiff disputes this fact, Plaintiff (whose factual opposition to the summary judgment motion was signed by counsel representing him at the time) offers no citation to the record in support of his assertion. (Doc. # 55). Moreover, upon independent examination of the record, the court finds no evidence that controverts the fact in question. Accordingly, for purposes of the motion for summary judgment, the court must deem the fact undisputed.

[7] Although Plaintiff's response to Defendant's statement of facts indicates that he disputes this fact, he has not provided any evidence to the contrary and the court has been unable to find any evidence in the record to the contrary. Thus, the court must deem the fact undisputed.

[8] Although Plaintiff's response to Defendant's statement of facts indicates that he disputes this fact, he has not provided any evidence to the contrary and the court has been unable to find any evidence in the record to the contrary. Thus, the court must deem the fact undisputed.

[9] By contrast, Defendant Mosley believes that Mad Dog approached the truck where Plaintiff was sitting. (Doc. # 25, Ex. D, ¶ 4). For purposes of summary judgment, the court must take the facts in the light most favorable to Plaintiff.

Mosley, when he reached for the Plaintiff's arm, Plaintiff swung at him and hit him with his elbow. (*Id.* at ¶ 7-9). Mosley and Boles then placed Plaintiff under arrest. (*Id.* at ¶ 7-9).

Plaintiff recalls that Mosley approached his car, cursed at him, and asked him what he was doing there on the street. (Owens Dep. p. 19, 27). Plaintiff "politely" asked if he was under arrest or if Mosley wanted him to move or leave. (Owens Dep. p. 19-20, 28). Plaintiff then got out of the truck and offered to put his hands on the truck. (Owens Dep. p. 20).

According to Plaintiff, the officers wrestled with him and tried to throw him to the ground. (Owens Dep. p. 20). Plaintiff "tussled" with the officers for 10 to 15, or 15 to 20, minutes before they got him to the ground. (Owens Dep. p. 20, 34-35).[10] After the officers succeeded in getting him to the ground, they placed handcuffs on him. (Owens Dep. p. 20, 41). Then Plaintiff claims that both of the officers, who were significantly larger than him, jumped on his back and Mosley kicked Plaintiff two or three times. (Owens Dep. p. 20, 42). Then Boles maced him once in the mouth and once in his nostril. (Owens Dep. p. 41-42). Plaintiff has a bad back and underwent back surgery prior to the arrest. (Owens Dep. p. 20, 108).

Plaintiff was then placed in the patrol car and carried to the police station. (Owens Dep. p. 54-56). Plaintiff thought he heard Chief Polion arrive at the scene after he was placed in the car, but he could not see what Polion did. (Owens Dep. p. 55-56). After arriving at the station, Plaintiff was given something to wash out his eyes. (Owens Dep. p. 58). Plaintiff was never informed he was under arrest for suspicion of drug transactions. (Owens Dep. p. 27-28).

---

[10] Plaintiff initially testified that Mosley jumped on his back and started wrestling with him. (Owens Dep. p. 20). He later testified that Mosley grabbed his hand while Boles "came around from the blind side and jumped on top of my back." (Owens Dep. p. 27-28). Plaintiff now claims that he simply misspoke when he initially said that Mosley jumped on his back because Boles was the one who jumped on his back. (Doc. # 55, at 3).

5

Afterward, Plaintiff claims Boles took his wallet and removed $860.00 in cash. (Owens Dep. p. 59). Boles then told another unknown City employee that Plaintiff only had $7.00 in his pocket. (Owens Dep. p. 59). Boles is the only Defendant whom Plaintiff alleges participated in the alleged theft of his money. (Owens Dep. p. 98-100). Plaintiff was given an orange jumpsuit and taken to a cell, at which point Plaintiff claims the Parrish City Hall was "locked down." (Owens Dep. p. 64-65).

Plaintiff was later charged and convicted of disorderly conduct and resisting arrest regarding the February 9, 2001 incident. (Doc. # 25, Ex. D). Owens was convicted in Municipal Court on those charges and appealed the conviction to the Circuit Court of Walker County. (*Id.*) The court takes judicial notice of the fact that Plaintiff failed to pursue his appeal, and the Circuit Court of Walker County remanded Plaintiff's case back to Municipal Court in July 2004.

Both Mosley and Boles were properly certified and trained. (Doc. # 25, Ex. B, ¶ 5).[11]

### III.   Applicable Substantive Law and Discussion

As a threshold matter, the court finds that Plaintiff has failed to perfect service on Frederick Boles and that, therefore, Plaintiff's claims against Boles are due to be dismissed, without prejudice.

Although a Summons to Boles was returned to the court in November 2003, it represents that a process server left copies of the Summons and Complaint with a person identified only as "Ms. Boles (mother)" at 3700-B Lodge Drive in Hoover, Alabama, 35216, on October 29 or 30, 2003. (Doc. # 17). Plaintiff represents that the process server determined that Defendant Boles's mother resides at 3605 32nd Street in Tuscaloosa and therefore attempted to serve him at that address, rather

---

[11] Although Plaintiff's response to Defendant's statement of facts indicates that he disputes this fact, he has not provided any evidence to the contrary and the court has been unable to find any evidence in the record to the contrary. Thus, the court must deem the fact undisputed.

than at the address indicated on the Summons (3700-B Lodge Drive in Hoover, Alabama). (Docs. # 13, 60). Defendants contend that the Summons and Complaint were improperly served on Defendant Boles' mother because the Tuscaloosa residence where the Summons and Complaint were served is only the residence of Boles' mother, not that of Defendant Boles. (Doc. # 14).

On November 17, 2004, the court issued a show cause order requiring Plaintiff, on or before November 29, 2004, to demonstrate that service on Defendant Boles was proper. (Doc. # 59). Although Plaintiff did submit a response to the court's order, he has failed to demonstrate proper service. Plaintiff's response indicates that he attempted to serve the Summons and Complaint on Boles at several locations to no avail. (Doc. # 60, at 1). Plaintiff then explains that a Summons and Complaint were served on Boles' mother at her residence at 3605 32nd Street in Tuscaloosa, Alabama. (Doc. # 60, at 2).

Federal Rule of Civil Procedure 4(e) provides that a copy of the Summons and Complaint may be left "*at the individual's dwelling house or usual place of abode* with some person of suitable age and discretion *then residing therein* . . . ." Fed. R. Civ. P. 4(e) (emphasis added). Although Plaintiff has shown that Boles' mother resides at 3605 32nd Street in Tuscaloosa, there has been no showing, as required by Rule 4(e), that Boles *himself* resides at the Tuscaloosa location where service was effected. Accordingly, service on Boles has not been perfected in this case and Plaintiff's claims against Boles are due to be dismissed, without prejudice, pursuant to Rule 4(m).

### A.     Section 1983 Claims

Plaintiff claims that his rights under the Fourth Amendment of the United States Constitution were violated by his being subjected to an unlawful search and seizure. (Doc. # 1). Allegations that Defendants Mosley and Boles used excessive force, mace, and handcuffs, and that Defendant Boles

stole Plaintiff's money,[12] form the factual basis for this claim against all of the Defendants.[13] Plaintiff further alleges that the City and Polion committed consitutional violations by failing to adequately train and and supervise Mosley and Boles.

### 1. **The City**

Plaintiff has failed to provide substantial evidence in connection with any acceptable theory upon which the City may be liable under §1983. The law is clear that Plaintiff may not rely upon *respondeat superior* to hold the City liable. *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Rather, when a local government is the subject of a claim under § 1983, the plaintiff must show that "the constitutional deprivation resulted from a custom, policy, or practice of the municipality." *Wideman v. Shallowford Comm. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (citing *Monell,* 436 U.S. 658). As the Eleventh Circuit has explained:

> Local governments are directly liable under Section 1983 for constitutional deprivations resulting from:
>
> (1) an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or
>
> (2) governmental custom, even though not authorized by written law.

*Martinez v. City of Opa-Locka, Florida*, 971 F.2d 708, 713 (11th Cir. 1992).

In this case, to hold the City liable for the alleged constitutional violations of its police officers, Plaintiff must establish an official policy or custom that indicates that the City was a

---

[12] With respect to the alleged theft of Plaintiff's $860, Plaintiff concedes that Boles was the only defendant who allegedly participated in this theft. (Owens Dep. p. 98-100). Boles is not properly in the case, as outlined above. Accordingly, the court will not discuss or consider the theft allegations in its analysis of the § 1983 claims.

[13] Excessive force cases are properly reviewed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989).

moving force behind the deprivations. *Martinez*, 971 F.2d at 713. Plaintiff may do so either by showing that the government's failure to train or supervise its officers rises to the level of a policy of deliberate indifference to the Plaintiff's rights, *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989), or that the City has demonstrated a persistent failure to take disciplinary action against the officers. *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir. 1985).

Although Plaintiff has alleged failure to train and supervise the individual officers in this case, the record is devoid of *any* evidence that Mosley and Boles were not trained in the use of mace and the handling of suspects, nor is there evidence of persistent failure to take disciplinary actions against those or other officers. In fact, the undisputed evidence indicates that both Mosley and Boles were properly certified and trained. Without evidence indicating a policy of deliberate indifference on behalf of the City, summary judgment is due to be granted as to Plaintiff's § 1983 claims against it.

### 2. **Defendant Polion**

For the same reasons that summary judgment is due to be granted for the City as to the allegations of failure to train and supervise Mosley and Boles, summary judgment is appropriate on such a claim against Polion. There is no evidence in the record that that the officers in this case were not trained in the use of pepper spray and the handling of suspects, nor is there evidence of persistent failure to take disciplinary actions against the officers.

Summary judgment is also appropriate on the the Fourth Amendment claims against Defendant Polion because there is no evidence that Polion was present for, personally involved in, or caused one of his employees to perform the alleged violations. Plaintiff recalls only that he thought he heard Chief Polion arrive at the scene after he was arrested and placed in the police car --

after the alleged violations had already occurred. (Owens Dep. p. 55-56). Without facts to support the Chief's personal involvement in the alleged unconstitutional conduct, he cannot be held liable under § 1983 and summary judgment is therefore appropriate on this claim as well. *Monell*, 436 U.S. at 691.

### 3. **Defendant Mosley**

Although Defendants argue that summary judgment on the § 1983 claims is appropriate as to Defendant Mosley because he merely subdued Plaintiff and transported him back to the police station, the court finds that the facts, taken in the light most favorable to the nonmovant, are disputed on this issue.

The court looks at all circumstances to determine the reasonableness of any seizure, arrest, or detention and the force used to effectuate the same. *Owens v. City of Atlanta*, 780 F.2d 1564 (11th Cir. 1986). In determining whether a constitutional violation occurred, the force must go beyond mere negligence or delinquency in order for unreasonable force to rise to a constitutional violation. *Owens*, 780 F.2d at 1565. In determining whether or not excessive force was utilized, the court must consider the need for the application of the force, the relationship between the amount of force used and the need presented, and the extent of the injury inflicted. *Owens*, 780 F.2d at 1565. Additionally, it must be determined whether the force administered was applied in good faith to maintain and restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm. *Owens*, 780 F.2d at 1565.

Although Mosley has raised the defense of qualified immunity to the § 1983 claims, the court finds that it is not applicable under the facts of this case. Qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless h[is] actions were

so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994). "We generally accord ... official conduct a presumption of legitimacy." *United States Department of State v. Ray,* 502 U.S. 164, 179 (1991).

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982).[14] "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (internal quotations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Pelzer*, 122 S. Ct at 2515 (internal quotations omitted).

Accordingly, "the salient question is whether the state of the law [at the time of the incident gave the Defendant] fair warning that [his] alleged [conduct] was unconstitutional." *Pelzer*, 122 S.

---

[14] "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit. *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

Ct at 2515. The court finds that it did. It is well-settled that the use of excessive force violates the Fourth Amendment. *Thorton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (determining that officers' use of any force violates clearly established law when officers do not suspect that arrestee has committed any serious crime and arrestee neither poses immediate threat of harm nor actively resists arrest) (citing *Graham v. Connor*, 490 U.S. 386, 394 (clearly establishing that use of excessive force in carrying out arrest constitutes Fourth Amendment violation)). *Cf. Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (determining that use of pepper spray is excessive force when crime is minor in nature, arrestee surrenders and is not violent, and no threat of harm exists).

In this case, there are material issues of fact as to whether the force Plaintiff claims was used to subdue him was excessive and whether additional force was used inappropriately after Plaintiff was subdued. Reviewing the record in a light most favorable to Plaintiff, a jury must determine the credibility of Plaintiff's account that Officer Mosley acted unlawfully in jumping on him and kicking him after he had been handcuffed. As a result, Officer Mosley's defense of qualified immunity must fail, and his summary judgment motion directed to the alleged violations of the Fourth Amendment under § 1983 is due to be denied.

### B. State Law Claims

The court now turns to the alleged violations of state law. First, the court finds that summary judgment on the conversion claim is apppropriate as to all Defendants. Plaintiff concedes that the only Defendant who allegedly participated in this theft was Boles. (Owens Dep. p. 98-100). As noted earlier, Boles is not properly in the case. Accordingly, there is no basis for this claim to remain in the case.

### 1. The City and Defendant Polion

With respect to the allegations of false imprisonment and negligence, summary judgment is appropriate for the City and Chief Polion for many of the same reasons that summary judgment was appropriate on the § 1983 claims against them. As outlined below, there is no basis for either direct liability or respondeat superior liability against either the City or Polion.

First, to hold the City *directly liable* for the conduct of Mosley and Boles, Plaintiff must prove that the City participated in, authorized, or ratified the alleged wrongful conduct. *Potts v. BE & K Const. Co.*, 604 So.2d 398, 400. To expressly or implicitly approve of the conduct, Plaintiff must show that the City (1) had actual knowledge of the alleged tortuous conduct; (2) knew or should have known that this conduct constituted a tort; and (3) armed with this knowledge, failed to take adequate steps to remedy the situation. *Potts*, 604 So.2d at 400. In this case, there is no evidence that the City knew of this incident with the Plaintiff or otherwise participated in, authorized, or ratified the officers' conduct. Accordingly, there is no basis for direct liability against the City.[15]

There is also no basis for direct liability against Chief Polion. A supervisor must be involved personally or directly in the alleged tortious conduct in order to be individually liable for that conduct. *Rizzo v. Good*, 423 U.S. 362, 374-77 (1976). As noted earlier, there is no evidence that Polion was personally involved in the circumstances of this case. He did not arrive at the scene until after the Plaintiff had been arrested and placed in the patrol car. Therefore, Plaintiff cannot rely on direct liability against Chief Polion.

---

[15] Furthermore, the City cannot be liable for the intentional torts of an employee. *City of Mobile, Ala. v. Sullivan*, 667 So.2d 122 (Ala.Civ.App. 1995); *Altmayer v. City of Daphne*, 613 So.2d 366, 369 (Ala. 1993).

Moreover, there is no evidence which would justify holding Polion or the City liable under a *respondeat superior* theory for the alleged violations of state law committed by Mosley or Boles. In order to hold either Defendant vicariously liable for the intentional acts of Mosley and Boles, Plaintiff must show the alleged wrongful conduct was committed within the line and scope of the officers' employment or that the officers committed the wrongful acts in furtherance of the City's business. *Shoney's, Inc. v. Barnett*, 773 So.2d 1015(Ala. Civ. App. 1999). Taking the facts in the light most favorable to Plaintiff, it is clear that any excessive force and inappropriate mace used on Plaintiff constituted acts outside of the scope of Mosley and Boles' duties as police officers. *See Potts v. BE&K Construction Co.*, 604 So. 2d 398, 400 (1992) (holding than an employer is only vicariously liable for employee's intentional conduct if the acts were done for the employer's benefit, *i.e.*, acts done in the line and scope of employment or acts done for the furtherance of the employer's interest); *Hendley v. Springhill Memorial Hospital*, 575 So. 2d 547, 550 (Ala. 1990) (finding that an employee's conduct "is not attributable to the principal if it emanated from wholly personal motives of the agent and was committed to gratify wholly personal objectives or desires of the agent"). Accordingly, there is no basis for respondeat superior liability against either the City or Polion in this case, and without a direct or vicarious basis for liability against these Defendants, summary judgment is due to be granted as to Plaintiff's state law claims.

### 2. Defendant Mosley

For the same reasons that Plaintiff's § 1983 claims survive against Defendant Mosley, summary judgment is due to be denied on Plaintiff's state law claims against Mosley. Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that Mosley's conduct constituted assault and battery and negligence in violation of state law. With respect to the false

imprisonment claim, the court finds that Defendant Mosley has not met his burden to show that he is due judgment as a matter of law, and therefore summary judgment is also due to be denied as to that claim.[16]

## IV.   Conclusion

For the reasons outlined above, the court finds that Defendant Boles is due to be dismissed, without prejudice, pursuant to Rule 4(m). Moreover, Defendants' motion for summary judgment is due to be granted as it relates to the following claims: (1) all claims against the City; (2) all claims against Defendant Polion; and (3) the state law conversion claim against Defendant Mosley. The court finds that the motion for summary judgment is due to be denied as it relates to all other claims against Defendant Mosley.

**DONE** and **ORDERED** this \_\_\_15th\_\_\_ day of December, 2004.

*/s/ R. David Proctor*

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[16] However, as outlined in the Order Setting Additional Briefing issued contemporaneously herewith, the court recognizes that new evidence may affect the validity of the false imprisonment claim against Mosley.